**[J-91-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| IN RE: P.G.F | : | No. 7 WAP 2020 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: K.F., NATURAL FATHER | : | Superior Court entered January 27, |
| | : | 2020 at No. 1284 WDA 2019 |
| | : | affirming the Order of the Court of |
| | : | Common Pleas of Bedford County |
| | : | entered August 7, 2019 at No. 3 AD |
| | : | 2018. |
| | : | |
| | : | ARGUED:  October 22, 2020 |

## OPINION

**JUSTICE TODD**                                              **DECIDED:  MARCH 25, 2021**

In this appeal by allowance, we consider whether, under the Adoption Act,[1] an attorney may act as both guardian *ad litem* and legal counsel for a minor child, in the context of a petition for termination of parental rights, where counsel did not expressly inquire into the child's preferred outcome of the termination proceedings.  For the reasons discussed below, we find that, in these unique circumstances, the attorney was able to fulfill her professional duties and act in both roles.  Thus, we affirm the order of the Superior Court, which affirmed the termination of parental rights in this case.

Appellee T.G.H. ("Mother") gave birth to P.G.F. ("Child") in July 2012.  Appellant K.F. ("Father") is child's biological father.  Mother and Father never married, and, when Child was around two months old, Mother and Father ended their relationship, and Father moved from their residence.  Although Mother and Father later entered into a custody

---

[1] 23 Pa.C.S. §§ 2101-2901.

agreement in 2014, whereby Father was to have physical custody of Child every other weekend, Father exercised his custody rights for only six to eight months, when Child was approximately three years old. Instead, Father's mother, D.H. ("Paternal Grandmother"), exercised Father's rights to partial custody.

In October 2017, Mother married E.N.H. ("Step Father"), and, on February 27, 2018, when Child was five years old, they filed a petition seeking to involuntarily terminate Father's parental rights in order to allow Step Father to adopt Child. The orphans' court appointed Appellee Carol Ann Rose, Esq. ("Attorney Rose") as Child's guardian *ad litem* and legal counsel. The court held hearings on the petition on July 31, 2018, and September 11, 2018, during which Mother, Step Father, Paternal Grandmother, and Father testified. Relevantly, although Attorney Rose cross-examined the witnesses during the hearings and argued that termination was in Child's best interest, she never expressly asked Child his preferred outcome in the termination proceeding. Ultimately, the orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b) of the Adoption Act,[2] and Father appealed to the Superior Court.

---

[2] Sections 2511(a) and (b) of the Adoption Act provide, in relevant part:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely

The Superior Court, before addressing the merits of Father's challenge, *sua sponte* examined the representation provided by Attorney Rose, and determined that it was insufficient pursuant to this Court's decision in *In re: T.S.*, 192 A.3d 1080 (Pa. 2018) (holding that a guardian *ad litem* may also serve as a child's legal counsel only when there is no conflict between the child's legal and best interests).[3]  Specifically, the court explained that it could not ascertain whether Child's legal and best interests were aligned because Attorney Rose never articulated Child's legal interests, nor did she suggest that Child — who was six years old at the time of the hearing — was unable to express his preferred outcome.  Accordingly, the Superior Court vacated the orphans' court's order and remanded, instructing the orphans' court to re-appoint legal counsel for Child and for counsel to attempt to ascertain Child's preferred outcome in the proceedings.  The Superior Court further directed that, if Child's legal and best interests were consistent, the orphans' court was to re-enter its termination order; otherwise, the orphans' court was to conduct a new termination hearing to provide Child's legal counsel the opportunity to advocate on behalf of Child's legal interest.  *In re: P.G.F.*, 2019 WL 1199986 (Pa. Super. filed Mar. 13, 2019).

---

on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

*Id.* § 2511.

[3] Before the Superior Court, neither party challenged whether an appellate court may *sua sponte* review whether counsel adequately represented a child's legal interest during an involuntary termination of parental rights hearing.  *See In re: Adoption of K.M.G.*, 240 A.3d 1218 (Pa. 2020), discussed *infra*.

On remand, the orphans' court held a hearing on August 7, 2019, during which Attorney Rose noted that she consulted with Child, and that Child indicated that his preferred outcome was to remain with Mother and Step Father. According to Attorney Rose, through a report provided to the court dated June 11, 2019 ("Counsel Report"), Child identified Step Father as his father, and did not call anyone else "dad" or "daddy." Counsel Report; N.T. 8/7/2019 at 5. Furthermore, Child became upset when told about the prospect of not living with Mother and Step Father. Attorney Rose also noted that Child did not appear to recall spending any time with Father, and when asked if Child knew anyone by Father's name, he recalled only a classmate with the same name.

In light of the foregoing, the orphans' court reinstated its order terminating Father's parental rights. Rather than issuing a written opinion, the court incorporated by reference the transcript from its hearing on remand. Therein, the court stated that it did not see any conflict between Child's legal and best interests, concluding that Child's preferred outcome was for Step Father to fill the parental role. Thus, the court reentered its September 2018 order terminating Father's parental rights. Father again appealed to the Superior Court, asserting, *inter alia*, that the orphans' court erred in finding no conflict between Child's legal and best interests.

On appeal, a divided Superior Court affirmed in an unpublished memorandum opinion. *In re: P.G.F.*, 2020 WL 579038 (Pa. Super. filed Jan. 27, 2020). Writing for the majority, Judge Dan Pellegrini found, *inter alia*, that, based upon the facts outlined above, the record supported the orphans' court's determination that Child's legal and best interests did not conflict. Thus, the Superior Court concluded that the orphans' court did not err in declining to appoint separate counsel to represent Child's legal interests. With respect to the fact that Child did not know that Father was his biological father and was not informed of the meaning of the termination proceedings, the court determined that, in

such "unique circumstances," legal counsel properly declined to explain these underlying circumstances, based upon Child's age, mental state, and emotional condition, particularly where Child had already bonded with Step Father; thus, counsel properly discharged her duties. *Id.* at *4 n.3.

Judge Mary Jane Bowes dissented, opining that, in her view, Attorney Rose's inquiry into Child's preferred outcome was insufficient. Specifically, Judge Bowes took issue with the fact that Attorney Rose attempted to discern Child's preference based upon his various relationships and interactions with Mother, Step Father, and Paternal Grandmother, rather than explicitly asking Child his preference as to the outcome of the termination proceedings. Judge Bowes also disagreed with the majority's reliance on Child's preference to continue in Mother's physical custody as grounds to infer a preferred outcome of the termination proceeding. Judge Bowes did not view these considerations as relevant in determining Child's legal interest, noting that the question was not whether Child preferred to remain in the same household as Mother and Step Father, but whether he preferred that Father's parental rights be severed. In Judge Bowes' view, when ascertaining Child's preferred outcome, Attorney Rose should have presented Child with all relevant facts — including that the person known to him as Paternal Grandmother's "friend" was actually his biological father — and informed Child that Father's parental rights would need to be terminated for Step Father to complete the adoption. Indeed, according to the dissent, it was Attorney Rose's principal obligation to ascertain Child's legal interest and to advance that interest, and by her lack of questioning, she failed to eliminate the potential for a conflict between Child's legal interest and best interests.

We granted allocatur on the single issue of whether an attorney could act as both guardian *ad litem* and legal counsel for a minor child, where legal counsel failed to

expressly inquire into the child's preferred outcome of a termination proceeding. *In re: P.G.F.*, 230 A.3d 1009 (Pa. 2020) (order).[4]

Father first argues that the failure to fully inform Child and inquire into his preferences stripped Child of his right to counsel and violated Child's right to due process. Specifically, Father offers that Attorney Rose failed to inform Child that termination proceedings were taking place. Related thereto, Father maintains that Child's opportunity to be heard was compromised, as he was never asked the explicit question of whether he wished for Father's paternal rights to be terminated, and, thus, did not receive all of the necessary information to convey a preference. Father rejects Attorney Rose's rationale for not asking this precise question and her reliance upon Child indicating that he was concerned that he would be removed from Mother's household. According to Father, the relevant question is not whether Child desired to remain in Mother's household, but whether he preferred that Father's parental rights be severed. As this question was never asked, Father submits that it was never determined whether there was a conflict between counsel's role as guardian *ad litem* and legal counsel; rather, Father contends it was erroneously assumed there was no conflict, and that separate counsel was putatively not necessary. Father argues that, while a guardian *ad litem* may serve as legal counsel where there is no conflict between the child's legal and best

---

[4] The question of whether there exists a conflict between legal counsel and a guardian *ad litem* is a mixed question of fact and law, subject to review for an abuse of discretion. This standard requires the reviewing court to accept the findings of fact and credibility determinations of the orphans' court if they are supported by the record. *In re: Adoption of S.P.,* 47 A.3d 817, 826 (Pa. 2012). As to the ultimate determination, the appellate court reviews the matter to determine if the orphans' court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon a showing of unreasonableness, partiality, prejudice, bias, or ill-will. *Id.* A reviewing court, however, should not reverse an orphans' court's determination merely because the record would support a different result. *Id.* at 827. Our Court has emphasized our deference to an orphans' court's first-hand observations of the parties with whom they have engaged for multiple hearings. *In re: T.S.M.,* 71 A.3d 251, 267 (Pa. 2013).

interests, here, because counsel did not ask Child his preferred outcome, he essentially had no legal counsel. Father concedes that Attorney Rose did not identify him as Child's biological father because she did not want Child to think that something would happen between his Mother and Step Father, or that he would lose Step Father, who Child believed was his father; nevertheless, Father presses that he should have been identified as Child's biological father and that Child should have been asked his preferred outcome of the termination proceeding. According to Father, this is especially true because Father claims that Mother prevented regular contact with Paternal Grandmother. While acknowledging that revealing that he was Child's biological father could cause Child emotional distress, Father asserts that it is the duty of an attorney to give their client unpleasant but pertinent information. Ultimately, Father stresses that, even though it may trigger negative recollections, Attorney Rose was mandated to inform Child that Father was his biological father, and then was required to determine Child's preference as to the termination of Father's parental rights.[5]

Appellee Mother responds that the orphans' court properly determined that Father withdrew from Child's life and failed to develop the parent-child relationship, that the Child's legal interests and best interests were not in conflict, and, as a result, that it was not error to allow a single court-appointed attorney to serve as both guardian *ad litem* and legal counsel. Mother points to *In re: Adoption of C.J.A.*, 204 A.3d 497 (Pa. Super. 2019), as instructive. In that case, a five-year-old child did not know that the individual

---

[5] The Juvenile Law Center, Community Legal Services, Inc., and 16 national, state, and local organizations and individuals have jointly filed an *amici curiae* brief in support of Appellant. *Amici* emphasize that a preferred outcome with regard to a termination petition is distinct from determining custody or with whom a child wishes to reside. Here, according to *amici*, Attorney Rose failed to ascertain whether Child had a preferred outcome regarding the termination petition and failed to inform Child of the circumstances surrounding that petition – that Father was Child's biological father. Such failures, according to *amici*, deprived Child of a voice in the permanent decisions regarding his relationship with Father.

challenging the termination petition was his biological father, and, because of the potential confusion and trauma to the child in explaining that his father existed, legal counsel was unable to fully explain to the child the nature of the termination proceedings.

Mother notes that, in *In re: C.J.A.*, as in the matter *sub judice*, the court nevertheless determined that counsel had satisfactorily discharged her duties and complied with the minimum requirements of the Adoption Act. *Id.* at 501-02. Related thereto, Mother takes issue with Judge Bowes' dissenting suggestion that legal counsel must, at a minimum, explain the termination proceedings, identify Father as Child's biological father, and ask if Child had a preferred outcome. Mother counters that where, as here, a child is unaware of the identity of his biological father, due in many respects to the conduct of the biological father himself, and where the child believes that another individual who has provided the love, comfort, and stability of a parent is the father, court-appointed counsel has fulfilled her duties, even without an explanation of the proceedings or the identification of the biological father. Mother claims that to require such identification would unnecessarily upset a child's understanding of the family order and risk potential emotional and mental upheaval.

Attorney Rose, as guardian *ad litem* and legal counsel, offers that, based upon her interview of Child to ascertain his preferred outcome of the case, Child believed that Step Father was his father and wanted to continue to live with Step Father and Mother. Attorney Rose stresses that, when she asked Child about Father, Child had no knowledge of him. Additionally, Attorney Rose notes that Child had no memory of calling anyone other than Step Father "dad" or "daddy." Attorney Rose Brief at 7-8. Based upon these circumstances, Attorney Rose asserts that she chose not to inform Child that Father was his biological father or to explain to Child why Father was not in his life, because it would have caused confusion and undue emotional trauma. Attorney Rose emphasizes that

Child was not of the age or developmental stage where he could have processed the information and made a decision about whether he wanted the parental rights of someone he did not know terminated. Attorney Rose adds that, when cross-examined at the hearing, Father admitted that Child did not know him, did not know him as his father, and that that had been true for at least two years prior to the hearing. Moreover, Attorney Rose contends that, when the purpose of the hearing was explained, Child became concerned about what would happen to him, expressed that he wanted to live with Mother, and was worried that he would not be able to live with Mother, Step Father, and his baby brother. In these circumstances, Attorney Rose argues no conflict existed and Child articulated his preferred outcome to be adopted.[6]

The termination of parental rights is a grave matter with far reaching consequences for the parents and the child. For this reason, our General Assembly has mandated that children be given a voice in termination proceedings. Accordingly, the Adoption Act requires that all children receive counsel in contested involuntary parental termination proceedings. Specifically, the Adoption Act provides in relevant part that:

> The court shall appoint counsel to represent the child in an
> involuntary termination proceeding when the proceeding is

---

[6] *Amici* KidsVoice, Defender Association of Philadelphia, Montgomery Child Advocacy Project, and Professor Lucy Johnston-Walsh and other professionals filed a brief in support of Child. *Amici* urge that the disclosure of Father's identity would have a significant and lasting effect on Child, and such disclosure should not come from Child's counsel. *Amici* believe Attorney Rose properly declined to inform Child about Father's identity, given Child's age and developmental capacity, and the likelihood that such a revelation would lead to confusion, anxiety, and trauma, but would not lead to a more meaningful decision by Child. Indeed, *amici* stress that young children are not "mini-adults" who are capable of understanding complex ideas and making meaningful decisions based upon such information. *Amici* KidsVoice *et al.* Brief at 13. Finally, *amici* offer that, if disclosure of a father's identity is required in these situations, it should only be after a clinical evaluation of the child to determine if disclosure is appropriate given the child's development and emotional capacity; further, any disclosure should be accomplished over a period of time, and guided by a clinician, a close family member, or some other person whom the child trusts.

being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a); *see In re: Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017) ("[W]hen a child's relationship with his or her birth family could be severed permanently and against the wishes of the parents, the legislature made the policy judgment, as is evidenced from the plain, unambiguous language of the statute, that a lawyer who represents the child's legal interests, and who is directed by the child, is a necessity."). As our Court has explained, a child's legal interests are distinct from his best interests. *In re: Adoption of L.B.M.*, 161 A.3d at 174. Representing the child's "'[l]egal interests' denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation," while a guardian ad litem discerns the child's best interests; in each case, these interests are ultimately determined by the orphans' court. *In re: Adoption of K.M.G.*, 240 A.3d at 1243 n.20 (quoting *In re: T.S.*, 192 A.3d at 1082 n.2 (quoting Pa.R.J.C.P. 1154, cmt.)); *see also In re: Adoption of L.B.M.*, 161 A.3d at 174 n.2. Given the importance, and indeed, the statutory mandate, of having an individual dedicated to discerning and advocating for the child's legal interests, it is only when a child's best interests and legal interests do not diverge, or where the child's legal interests cannot be ascertained, that a court-appointed attorney may serve in the dual capacity of guardian *ad litem* and legal counsel; however, when there exists a conflict between a child's best interests and the child's legal interests, these interests must be represented by separate individuals. *In re: Adoption of K.M.G.*, *supra*.

While not directly controlling this appeal, our recent decision in *In re: Adoption of K.M.G.* is instructive. Therein, in the majority opinion authored by Justice Baer, we synthesized a number of recent decisions in this area. While recognizing that the Court

had previously been divided over the exact contours of Section 2313's right to counsel, we first reiterated that orphans' courts are obligated by Section 2313(a) to appoint counsel to serve the critical role of a child's attorney, zealously advocating for the legal interests of the child who otherwise would be denied a voice in the termination proceedings, and that when a child's legal interests conflict with the child's best interests, those interests must be represented by separate individuals to ensure that the child's legal interests are presented to the orphans' court. We then turned to three discrete questions regarding appellate review of counsel's representation of a child in involuntary termination proceedings. First, we considered whether an appellate court had the authority to review, *sua sponte*, whether a child's legal interest was properly represented by counsel under Section 2313(a). We reasoned that, as children do not have the ability or opportunity to challenge a denial of their right to counsel, and given the importance and permanency of termination proceedings, as well as children's inability to navigate the termination process themselves, an appellate court should engage in *sua sponte* review to determine if the orphans' court has appointed counsel to represent the child in compliance with Section 2313(a). In addition, where the orphans' court has appointed a single attorney to serve as guardian *ad litem* and legal counsel to represent both the child's best interests and legal interests, we concluded an appellate court should review *sua sponte* whether the court made a determination that those interests did not conflict.

Importantly, however, we cautioned that "appellate review of this question does not involve second-guessing whether [the guardian *ad litem* or legal counsel] in fact had a conflict . . . but solely whether the orphans' court made the determination in the first instance." *In re: Adoption of K.M.G.*, 240 A.3d at 1235-36. This latter assessment allows for yes or no answers, "binary, record-based determinations":

> Specifically, we grant *sua sponte* review to evaluate (1) whether the orphans' court appointed counsel to represent the

legal interests of the children and (2) if the appointed counsel also serves as [guardian *ad litem*], whether the orphans' court determined that the child's best interests and legal interests did not conflict. Both inquiries involve a yes or no answer that can be addressed by a review of the orphans' court order (or lack thereof) appointing counsel to represent a child under Section 2313(a). We conclude that this limited review strikes an appropriate balance between protecting children who cannot assert their own right to counsel, while insuring the least disruption to 'the process of orderly judicial decision making' in termination proceedings.

*Id.* at 1236.

We contrasted these permissible *sua sponte* appellate inquiries with *sua sponte* review of whether *the record* demonstrates there was no conflict. We explained that such review was not a binary inquiry, but necessitated that appellate courts delve into a fact-specific assessment of whether and to what extent a child's preferred outcome conflicts with the guardian *ad litem*'s view of the child's best interests. We characterized this determination as nuanced, noting that "the attorney's view of the child's best interests and the child's preferred outcome likely lie, somewhat nebulously, on a continuum between strongly favoring termination and strongly disfavoring termination. It is not for an appellate court to determine how closely the interests must align or overlap to negate the existence of a conflict." *Id.* at 1236. Critically, we expressed great reluctance in allowing appellate courts to "reweigh an orphans' court's determination that the interests do not conflict, where the orphans' court has witnessed the parties over the course of the dependency and termination proceedings and is presumably aware of the relationship formed between the [guardian *ad litem*] and the children." *Id.* (citing *In re: T.S.M.*, 71 A.3d at 267 (deferring to "trial courts that often have first-hand observations of the parties spanning multiple hearings" in termination of parental rights proceedings)).

Finally, our Court rejected any assumption that the absence of a child's preference stated on the record equated to counsel's failure to ascertain the child's preferred

outcome or to provide effective representation of the child. Importantly for present purposes, we determined that the child's preference need not be placed on the record, due to the lack of such a mandate in the Adoption Act, concerns of violating the attorney-client privilege, and the specter of placing emotional stress on the child by making his or her feelings public. *Id.* Instead, we left the decision of whether to place the child's preference on the record to the professional judgment of child's counsel, as well as to the discretion of the orphans' court, noting that the latter often witnessed the child, relevant family members, and other stakeholders through months of hearings. *Id.* at *13.

Accordingly, while *In re: Adoption of K.M.G.* addressed an appellate court's *sua sponte* review of an orphans' court's conflict determination, and, thus, is not dispositive herein, we glean significant considerations from that decision informing our analysis of both an attorney's duty to discern a child's preferred outcome in a termination proceeding, and the court's ultimate determination of whether a conflict exists. Generally, an attorney acting as a child's legal counsel must, at a minimum, attempt to ascertain the child's preference and advocate on the child's behalf. Admittedly, that inquiry may be no simple task.[7] First, discerning a child's preference will necessarily be a fact-intensive and nuanced process, based upon an attorney's observations and interactions with the child. Moreover, minors, as a class of individuals, fall within a wide range of ages, maturity levels, and emotional capacity that all factor into a child's ability to express a preference. As a result, ascertaining a child's preferred outcome may involve various circumstance-appropriate strategies. At one end of the spectrum, an attorney may represent an older, mature child who understands precisely what a termination proceeding entails and may articulate in clear, even binary, terms his preference for the outcome of the proceedings.

_____

[7] In certain instances, an attorney may need the assistance of a professional to determine the best approach in determining a child's preferences. However, we do not believe this was one of those cases.

By contrast, an attorney may represent a very young, less mature, child, who is unable to express any understanding of the proceedings or articulate a preference as to their outcome.

Yet, in the middle of this range may be a child who understands to some degree what is at stake in the proceedings, and who is capable of expressing some preference, but who is unable to do so in a fully informed and articulate fashion. In these instances, an attorney must make reasonable, but at the same time prudent, efforts to discern the child's desires. And, not only age and maturity may inform the analysis. There may be circumstances surrounding a termination proceeding that hamper determining a child's clear preference. This case provides a good example. Where, as here, the child is unaware of certain sensitive facts and could be emotionally harmed if informed of such facts or closely interrogated regarding his preference, we believe caution and reflection is not only acceptable, but required. We will not mandate that an attorney convey highly sensitive, significant, and potentially emotionally damaging information to a child, or engage in a raw inquiry, merely to discern the clearest indication of a child's preference. This would be unfair to the child and the attorney. Attorneys are not child therapists or child psychologists. While an attorney must ascertain his client's legal interest and advocate for it, in the context of a minor client, we believe modulation is necessary, and achieving a definitive understanding of the child's preference may simply be too disruptive and hurtful. Thus, we conclude significant deference must be accorded to counsel's approach in discerning a child's preferences and the child's articulation thereof. *Cf. In re: Adoption of K.M.G.*, 240 A.3d at 1236 (characterizing determination as nuanced and nebulous). Accordingly, and significantly, we deem concern for a child's physical, mental, and emotional well-being to be a valid consideration when counsel attempts to discern

the child's preference. *Cf. id.* 1238 (embracing consideration of "unconscionable stress" being placed on child).[8]

Related thereto, once a child's preference has been articulated, or it is determined that the child cannot articulate a preference, the orphans' court must determine whether counsel has fulfilled his obligations to discern a child's preferred outcome, whether a conflict with the child's best interest exists, and whether counsel can serve as both legal counsel and guardian *ad litem*. Again, in doing so, the orphans' court should give due consideration to counsel's approach, findings, and conclusions regarding whether a conflict exists, as counsel has interviewed the child first hand, and has assessed the child's age, maturity, understanding, mental state, and emotional capacity (perhaps with, as noted above, the assistance of a professional in certain situations). In turn, an appellate court should give substantial deference to the orphans' court's determination regarding whether the interests of legal counsel and guardian *ad litem* conflict, especially where the court has witnessed the parties during numerous proceedings. *Cf. id.*

We find the Superior Court's decision in *In re: Adoption of C.J.A.*, 204 A.3d 497 (Pa. Super. 2019), to be consistent with this approach. In that case, an attorney represented a child solely as legal counsel in involuntary parental termination proceedings. The attorney explained that the child, who was five years old, did not remember his father, whom he had not seen for two years, and that the child believed his mother's fiancé was his biological parent. The attorney averred that the child would have

---

[8] *Amici* KidsVoice *et al.* maintain that a six-year-old child is "not developmentally capable of comprehending and processing abstract and complex ideas and concepts, such as biological father versus step-father and termination of parental rights and adoption, nor is a child this age capable of making meaningful decisions involving these concepts." *Amici* KidsVoice *et al.* Brief at 13-14. Indeed, *amici* suggest children up to the age of 10 have a reduced capacity for such comprehension and processing. *Id.* at 15. While this threshold may provide a useful rule of thumb, we need not adopt such a bright line in this case.

nothing to say about the father, because the child did not know that he was the child's biological father. In her brief to the court, the attorney offered that, "due to the age and maturity of [the child] along with the fact that he did not know [father] was his biological father, the undersigned, as legal counsel, was unable to explain the termination of parental rights proceeding and/or discuss the potential adoption by [the fiancé]." *Id.* at 502. The attorney continued, "[h]owever, the undersigned was able to view the relationship between [child] and [fiancé] and it was clear that the two had a strong bond particularly because [child] identified [fiancé] as his biological father and had never been told otherwise." *Id.* The Superior Court opined that, under the unique circumstances presented, the attorney's representation of the child complied with the requirements of Section 2313(a), stressing that the child was just over six years old, did not realize that the biological father existed, and that disclosing such information could have been confusing and traumatic to the child. Thus, the court concluded that counsel's judgment in this regard was reasonable, and that she discharged her duty as the child's counsel to the best of her ability, based on the child's age, mental condition, and emotional condition. *Id.* at 502; *see also In re: Adoption of J.K.M.*, 2019 WL 1595680 (Pa. Super. filed Apr. 15, 2019) (finding that attorney serving as legal counsel and guardian *ad litem* of four-and-one-half-year-old child who did not remember father and was adamant that he wanted to continue living with his foster parents sufficiently represented child's legal interests).

We now apply these considerations to the matter *sub judice*. Child was five years old at the initial hearings, and six years old at the remand hearing. Child identified Step Father as his father and called no one else "dad" or "daddy." Counsel Report, *supra*. Child did not appear to recall spending any time with Father, and, when asked if Child knew anyone by Father's name, he recalled only a child his age with the same name. When this case was remanded for a hearing over a year after the initial hearings, Attorney

Rose determined that Child had no knowledge of Father. Additionally, she concluded Child did not understand what was meant by an adoption. However, Child became upset when told about the prospect of not living with Mother and Step Father, and clearly indicated that he wanted to live with Mother and Step Father.

Significantly, Child did not know that Father was his biological father. This, together with the fact that Child identified Step Father as his father, drove Attorney Rose's decision not to inform Child of the identity of his biological father, or the exact meaning of the termination proceedings, or to expressly ask Child's preference specifically regarding termination. Attorney Rose believed that doing so would have caused Child confusion, anxiety, and emotional trauma. Further, the orphans' court determined that Child's preferred outcome was for Step Father to fill the parental role, and explicitly found no conflict in Attorney Rose representing both Child's legal and best interests.

Under these circumstances, we find that Attorney Rose properly fulfilled her obligation to ascertain Child's preferred outcome of the termination proceedings to the best of her professional ability. Child was only six years old, and, in counsel's view, was not mature enough to understand the concept of adoption proceedings, let alone an action for parental termination. Given Child's age, understanding, mental state, and emotional capacity, Attorney Rose reasonably declined to explain to Child that he had a biological father when Child was not aware that Father existed and had already bonded with Step Father, viewing him as his father. During the last interview with Child, Child became concerned as to what was going to happen to him when the purpose of the hearing and the possible outcomes thereof were explained. Attorney Rose reasonably concluded that explaining these facts to Child, as she was not a family member or otherwise in a close personal relationship with Child, would have risked confusion, anxiety, and emotional trauma, potentially resulting in lasting damage to Child's well-being. Thus, we conclude

that Attorney Rose's decision to forego informing Child that Father was his biological father and providing an overt explanation of the meaning of a termination proceeding did not constitute a breach of her duty to discern Child's preferred outcome. Furthermore, we conclude that Attorney Rose properly determined that no conflict existed, as Child described his desires, as best as he could in the situation, and did not provide any information that suggested a conflict. In these circumstances, we find that the orphans' court reasonably determined that Attorney Rose could act without conflict in this instance.

Finally, we note that the dissenters reasonably favor a different approach than we announce today, one which is largely in alignment with Justice Bowes' position advanced in her dissent below: they would mandate, to one degree or another, that counsel provide a child with the necessary facts – here, the six-year-old Child's awareness of Father – to allow the child to articulate a preference regarding the termination proceedings. *See* Dissenting Opinion (Wecht, J.) at 6 ("Without knowing who Father is and without knowing the consequences of the TPR, Child cannot adequately form a legal preference."); Dissenting Opinion (Donohue, J.) at 5 ("What was relevant to Child's understanding of the proceeding was that there was another person who has an interest in being a part of his life, and the outcome of the proceeding will prevent him from doing so.").

Regarding Justice Wecht's dissent, we merely note our disagreement that our decision today countenances that an orphans' court should, or will, "defer blindly" to counsel's determinations. Dissenting Opinion (Wecht, J.) at 9. Rather, as noted above, we believe an orphans' court should accord "significant deference" regarding counsel's approach, including consideration of the child's "physical, mental, and emotional well-being." *See supra* page 14. As we offered in *In re: Adoption of K.M.G.*, *supra*, it is the orphans' court who, over the course of various proceedings, will be aware of the relationship between the guardian *ad litem*, legal counsel, and the child. *In re: Adoption*

*of K.M.G.*, 240 A.3d at 1236 (citing *In re: T.S.M.*, 71 A.3d at 267 (emphasizing that it is the orphans' court who will have first-hand observations of the child, parents, guardian, and counsel)). As a result, we do not share the dissent's fear that counsel will "shape, or even distort, the information" on which a child will express his or her preference. Dissenting Opinion (Wecht, J.) at 8.

In her dissent, Justice Donohue criticizes multiple aspects of our decision, and of Attorney Rose's representation. The dissent initially points to what she views as a dearth of references to the record. Dissenting Opinion (Donohue, J.) at 1-2. Of course, the Counsel Report, which is part of the record and cited above, formed the basis for Attorney Rose's decision-making, and speaks most directly to the legal question we answer today. Related thereto, the dissent stresses Attorney Rose's testimony and examination by Father's counsel, albeit for the largely undisputed notion that Attorney Rose did not inform Child of the existence of Father, that her questioning focused principally on the Child's future living arrangements and adoption, and that she did not ask Child if he preferred terminating his relationship with Father.

The dissent then, *sua sponte*, raises the issue of counsel's responsibility to consider the unsettled state of law regarding the Child's relationship to Father's mother, and criticizes Attorney Rose for failing to consider this relationship. *Id.* at 4. Yet, Appellant did not raise this question for our review. Continuing its disapproval of Attorney Rose's actions, the dissent characterizes her representation as "subpar," *id.* at 2, and suggests, *inter alia*, that she "misstated the consequences of the proceeding" and "refused to provide accurate information," ultimately reaching the troublesome conclusion that counsel violated the Rules of Professional Conduct regarding communications with clients. *Id.* at 7 (citing Pa.R.P.C. 1.4(b)). These accusations of professional misconduct are unwarranted. Attorney Rose is a long-time practitioner, whom the trial judge in this

matter evidently respected. *See* N.T. 8/7/2019, at 23 ("In fact, I trust the guardian's opinion pretty highly, because I think her own heart strings, her own emotions go towards some interest of the father's."). Furthermore, this appeal involves an issue of first impression: the contours of counsel's legal duty in these circumstances. If the contours of legal representation are in flux, it is inappropriate in our view to hold counsel to a precise standard of conduct. Related thereto, it was Attorney Rose's belief and actions (vindicated by the trial court, the Superior Court, and now our Court) that she was not able, due to Child's age and maturity, to provide relevant information regarding Child's Father, and, thus, explicitly explain the consequences of the proceedings. While the dissent believes this to be unprofessional conduct, under the circumstances of this case, we view it as unfair to level misconduct charges against Attorney Rose.

Ultimately, the dissent disagrees with the Court (and the lower tribunals) as to whether counsel did enough in these unusual circumstances to determine the preferences of Child. What the dissent refers to as a "varnished analysis," Dissenting Opinion (Donohue, J.) at 2, is, rather, our attempt to recognize the fact-intensive, nebulous, and nuanced nature of these types of decisions; the deference to be given counsel in these delicate circumstances, as well as to orphans' court judges, who have a front row seat to these proceedings; and the legitimate concern for a child's physical, mental, and emotional well-being revealed in counsel's approach. Under these facts, we find that Attorney Rose fulfilled her obligation to discern Child's preference regarding these proceedings.

For the above stated reasons, we affirm the order of the Superior Court, affirming the termination of parental rights in this case.

Chief Justice Saylor and Justices Baer, Dougherty and Mundy join the opinion.

Justice Donohue files a dissenting opinion in which Justice Wecht joins.

Justice Wecht files a dissenting opinion.